IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PATRICIA OWUSU-SAMPAH**, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:09-CV-2344-L** |
| | § | |
| **CUNA MUTUAL INSURANCE** | § | |
| **SOCIETY AND MONUMENTAL LIFE** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant CUNA Mutual Insurance Society's Motion for Summary Judgment, filed February 11, 2011; and Defendant CUNA Mutual Insurance Society's Motion for Submission on the Briefs, filed May 19, 2011. After carefully reviewing the motions, response, reply, record, and applicable law, the court **grants** Defendant CUNA Mutual Insurance Society's Motion for Summary Judgment and **denies as moot** Defendant CUNA Mutual Insurance Society's Motion for Submission on the Briefs.

**I.    Factual and Procedural Background**

On December 9, 2009, Plaintiff Patricia Owusu-Sampah ("Owusu-Sampah" or "Plaintiff") filed Plaintiff's Original Complaint against Defendants CUNA Mutual Insurance Society ("CUNA" or "Defendant") and Monumental Life Insurance Company ("Monumental"). In light of the Notice of Partial Settlement, between Plaintiff and Monumental, Monumental is no longer a party to this action. Plaintiff asserts claims against Defendant for: (1) breach of contract; (2) violations of the

**Memorandum Opinion and Order- Page 1**

Texas Deceptive Trade Practices Act ("DTPA"); and (3) violations of Sections 21.55[1] and 541.060 of the Texas Insurance Code.

Plaintiff contends that as a beneficiary of an accidental death and dismemberment policy (the "Policy") issued by CUNA to George Sampah,[2] her lawful husband, she is entitled to receive death benefits. According to Plaintiff, the Policy obligated CUNA to pay her death benefits upon the death of her husband, who died on May 3, 2008. Because of CUNA's failure or refusal to pay her the death benefits, Plaintiff contends that CUNA's actions violated: (1) the "prompt payment" and "unfair settlement practices" provisions of the Texas Insurance Code; (2) were deceptive and violated the DTPA; and (3) constitute a breach of contract. CUNA counters that it did not unlawfully fail or refuse to pay death benefits under the Policy, that Plaintiff has failed to provide it with information necessary to adjudicate her claim, and that Plaintiff has failed to establish coverage under the terms and provisions of the Policy.

On February 11, 2011, CUNA filed its Motion for Summary Judgment, contending that no genuine issue of material fact exists with respect to any claim asserted by Owusu-Sampah and that it is therefore entitled to judgment as a matter of law. Plaintiff, on the other hand, responds that she has set forth evidence that raises a genuine issue of material fact as to each claim.

---

[1] Plaintiff's Original Complaint cites to Article 21.55 of the Texas Insurance Code; however, Texas repealed Article 21.55 and replaced it with Tex. Ins. Code Ann. § 541.060 (West 2005). All future references to violations of this portion of the Texas Insurance Code will refer to this revised statute.

[2] The court is not certain of decedent's last name. The Complaint and the Policy list his name as "George Sampah." The Autopsy Report and other documents list his name as "George Owusu-Sampah." As Plaintiff's counsel should be familiar with decedent's name and the Policy issued by CUNA list his name as "George Sampah," this is the name that the court uses. If the court is incorrect, it apologizes to any person who may be offended by the error.

**Memorandum Opinion and Order- Page 2**

Mr. Sampah suffered from numerous health problems before his death, including sickle cell anemia, hypertension, and mild coronary artery disease. Def.'s App. at 24. On November 12, 2007, the Policy was issued to Mr. Sampah. *Id.* at 8. It went into effect on January 1, 2008. *Id.* at 1. The Policy, in part, states that "benefits are provided to *covered persons* for *accidental death* and *accidental dismemberment*." *Id.* at 3. With respect to the issues raised by the parties, the Policy excludes payment of any benefit for a loss or covered injury that "is due to any disease, sickness, [or] bodily . . . illness." *Id.* at 5. The Policy also contains an exclusion for any injury that "occurs while under the influence of any illegal drug, or any legal drug if it is not used in accordance with the usage instructions for that drug." *Id.*

On May 3, 2008, Mr. Sampah "was a guest in a motel in Seligman, [Arizona,] when a guest in an adjacent room reportedly heard noises and notified the operator of the motel." *Id.* at 20. Mr. Sampah was found unresponsive in his hotel room and pronounced dead by ambulance personnel. Dr. Philip E. Keen, M.D. ("Dr. Keen"), the Yavapai County Medical Examiner, conducted an autopsy on May 5, 2008. Dr. Keen determined that Mr. Sampah's death was the result of cardiomegaly due to hypertensive cardiovascular disease and that other causes of death were fibrous pleurisy and sickle cell disease. *Id.* at 17. Dr. Keen classified the manner of death as "natural." *Id.* On May 15, 2008, Dr. Keen amended the autopsy report and reclassified the manner of death as an "accident." *Id.* at 18. The Amendment to Report of Autopsy lists the cause of death as: "cardiomegaly due to [] hypertensive cardiovascular disease and [] hydrocodone intoxication[;] other: fibrous pleurisy; sickle cell disease." *Id.* The amended report lists the "item(s) amended on [the] original autopsy report [as] [] rewording of [the] cause of death [to] reflect[] significantly elevated [h]ydrocodone contributing to [his] death." *Id.*

Defendant contends that Mr. Sampah's death is not covered under the Policy because it was not an "accidental death" as defined by the Policy, as his injury was not caused directly by an accident that occurred independently of all other causes. Defendant further contends that even if Plaintiff could establish that Mr. Sampah's death was accidental, two Policy exclusions preclude coverage. In this regard, Defendant contends that Plaintiff cannot prove that Mr. Sampah was legally prescribed hydrocodone. Defendant further contends that Plaintiff is precluded from recovery because Mr. Sampah suffered from a number of serious, chronic illnesses that contributed to his death. Plaintiff responds that she is entitled to recover death benefits under the Policy because Mr. Sampah's death was an accident resulting from an injury as defined by the Policy. Plaintiff also responds that Mr. Sampah's death was proximately caused by an accidental overdose of hydrocodone, independent of all other proximate causes. Plaintiff further responds that there is no evidence to suggest that Mr. Sampah was not taking hydrocodone per a doctor's orders.

**II.    Legal Standard-Motion for Summary Judgment**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most

favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case

and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

### A. Introduction

As previously stated, Plaintiff asserts claims against Defendant for (1) breach of contract; (2) violations of the DTPA; and (3) violations of the Texas Insurance Code. Given that potential violations of the DTPA and the Texas Insurance Code both turn on the interpretation of the Policy, the court will first examine Plaintiff's breach of contract claim. As Mr. Sampah's death is not covered under the terms of the Policy, there is no need to examine the remaining claims.

### B. Breach of Contract

Plaintiff contends that Defendant breached the terms of the Policy by failing to pay her the insurance benefits upon her husband's death. "Under Texas law, '[t]he essential elements in a breach of contract claim are as follows: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.'" *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir. 2008) (citing *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex.App.-Houston [14th Dist.] 2000, *no pet*.)).

Defendant has moved for summary judgment, arguing that Mr. Sampah's death was not accidental and that his use of legal drugs was not in accordance with the usage instructions. Defendant further contends that Plaintiff is precluded from recovery because Mr. Sampah's preexisting medical conditions contributed to his death. Plaintiff responds that Defendant has misconstrued the Policy terms, that the evidence negates Defendant's contentions, and that Mr.

Sampah's death was proximately caused by an accidental overdose of hydrocodone, independent of all other causes. In other words, Plaintiff contends that hydrocodone intoxication falls within the definition of an accidental death and is therefore covered by the terms of the Policy. *The initial question that the court must decide is whether Mr. Sampah's death was an accidental death as defined by the terms of the Policy.* The court begins its analysis by reviewing the law related to construction and interpretation of contracts and a discussion of the definitions in the Policy.

In Texas, "insurance policies are generally controlled by the rules of construction and interpretation applicable to contracts." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858 (5th Cir. 2006) (citing *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). In diversity cases, as here, the court interprets contracts according to the applicable state law which, in this case, is Texas law. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). Terms in an insurance contract "are given their ordinary and generally[] accepted meaning unless the policy shows the words are meant in a technical or different sense." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 126 (Tex. 2010) (internal citations omitted). "If terms in the contract can be given a definite or certain legal meaning, they are not ambiguous and the court will construe the contract as a matter of law." *Id.* Under Texas law, when a policy is susceptible to more than one reasonable interpretation, courts must resolve the uncertainty by adopting the construction that favors coverage, and construe the contract against the insurer. *See National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).

Furthermore, "intent to exclude coverage must be expressed in clear and unambiguous policy language." *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 (Tex. 1993). "Exceptions and limitations in an insurance policy are strictly construed against the insurer." *Allstate Ins. Co. v.*

*Disability Servs. of the Southwest Inc.*, 400 F.3d 260, 263 (5th Cir. 2005) (citing *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996)). "The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable . . . ." *Lincoln Gen.*, 468 F.3d at 858 (quoting *National Union*, 811 S.W.2d at 555).

In this case, the Policy language is unambiguous, and, thus, "the principle of construing insurance contracts strictly against the insurer does not apply, and [the court] must give the language of the [P]olicy its plain meaning." *Sekel v. Aetna Life Ins. Co.,* 704 F.2d 1335, 1338 (5th Cir. 1983). The Policy provides that "benefits are provided to *covered persons* for *accidental death* and *accidental dismemberment*." Def.'s App. at 3. The Policy defines "accidental death" as "death resulting from *injury*." *Id.* at 2. Injury is defined as "[b]odily damage or harm which: (a) is caused directly by an *accident* and independently of all other causes; (b) is effected solely through external means; and (c) occurs while a *covered person's* insurance is in force under *your* certificate. *Id.* at 3. Further, the Policy defines "accident" as "an occurrence which is unexpected or unforeseen, either as to its cause or as to its result." *Id.* at 2.

Defendant contends that Mr. Sampah's death is not covered by the Policy because his death was not an "accident" as defined by the Policy. In this regard, CUNA contends that, as required by the Policy, Mr. Sampah's death did not result from an injury that was caused directly by an accident and independently of all other causes. Defendant points out that all three medical experts agree that Mr. Sampah's hydrocodone intoxication and preexisting medical conditions contributed to his death. In sum, CUNA asserts that the presence of the comorbidities negates the "independent" requirement of the Policy and, therefore, Mr. Sampah's death is not covered by the Policy.

Plaintiff responds that Mr. Sampah's death is covered by the Policy because his death was an accident. In support of this argument, Plaintiff notes that Dr. Keen ruled Mr. Sampah's death as an accident. Further, Plaintiff points out that Dr. B.P. Respess, M.D. ("Dr. Respess"), Plaintiff's expert, opined that Mr. Sampah's level of cardiomegaly did not precipitate his death and that someone with such condition "could have easily survived into his eighties." Pl.'s App. F. Plaintiff also notes that Dr. Vincent J.M. DiMaio, M.D. ("Dr. DiMaio"), Defendant's expert, agrees that sickle cell disease played little to no role in Mr. Sampah's death. Plaintiff further points out that Dr. DiMaio opined that Mr. Sampah's death was caused by a "garden-variety" heart attack, not because he can point to a reason for the heart attack, rather but he cannot point to another reason for it.

Defendant replies that Plaintiff ignores the Policy definition of "accident." Defendant further replies that because each expert agrees that the hydrocodone intoxication was not the sole and independent cause of death, this fact alone renders the claim not payable.

The court agrees with Defendant and concludes that Mr. Sampah's death does not fall within the requirements for coverage under the Policy. The unambiguous terms of the Policy limit the coverage to deaths caused by injury. This means, among other things that are irrelevant to the court's analysis, bodily harm that is caused directly by an accident and independently of all other causes. The term "accident" means "an occurrence which is unexpected or unforeseen, either as to its cause or as to its result." Def.'s App. at 2. Although the Policy does not define the term "independently," Texas precedent defines the term "[to] mean 'solely,' 'only,'[or] 'standing alone'" from all other causes. *Mutual Benefit Health & Accident Ass'n v. Hudman,* 398 S.W.2d 110, 112 (Tex. 1965) (citations omitted).

Taking the facts in the light most favorable to Plaintiff, the court determines that Defendant has shown that no genuine issues of material fact exist as to Plaintiff's breach of contract claim. Defendant has presented competent evidence that Mr. Sampah's death was not caused directly by an accident and independently of all other causes. Defendant further presents evidence from three competent medical experts who all agree, to some degree, that Mr. Sampah's preexisting medical conditions (diseases) contributed to his death. Dr. Keen, the Yavapi County Medical Examiner, opined that Mr. Sampah suffered

> an acute cardiac arrhythmia secondary to hypertension but also likely was experiencing some degree of a sickle cell crisis. The contributing factors may have been fatigue (recent work shift and long drive by automobile) and hypoxic stimulus from both elevated concentration[s] of hydrocodone and being at [an] elevation higher than that to which he was accustomed to.

Def.'s App. at 24. Dr. DiMaio, Defendant's expert, testified "that it is [his] opinion that, in all medical probability, Mr. Sampah died of a fatal cardiac arrhythmia secondary to severe heart disease and sickle cell anemia." *Id*. at 50. Dr. Respess, Plaintiff's expert, opined that Mr. Sampah's death was not caused by hydrocodone intoxication independently of all other causes. *Id.* at 55-56. In this regard, Dr. Respess testified that the elevated level of hydrocodone alone did not cause Mr. Sampah's death and that he has never seen a case where an adult has fatally overdosed with hydrocodone concentration of the level found in Mr. Sampah's body. *Id.* at 53-54. *In other words, Plaintiff's expert specifically opines that factors in addition to the elevated amount of hydrocodone (hydrocodone intoxication) in Mr. Sampah's body contributed to his death. Id. at 54.*

After reviewing the expert deposition testimony, it is clear to the court that Mr. Sampah's hydrocodone intoxication was not caused independently of all other causes. Although there is some

disagreement among the experts as to the comorbidities' *degree* of influence, there is agreement among the experts that Mr. Sampah's death was not caused by hydrocodone intoxication (the accident as alleged by Plaintiff) independently of all other causes. Benefits under the Policy are only payable when the death was accidental, which means that the injury resulting in death was directly caused by the accident, and the accident *only*. The record reflects that hydrocodone intoxication *and* other comorbidities worked in tandem to cause Mr. Sampah's death. According to Plaintiff's expert, a "comorbidity" is a variety of different diseases that a patient may have that can contribute and actually produce a cumulative effect that's worse than any single one [disease] might be." *Id*. at 54. One authoritative source defines comorbidity as "[a] concomitant but unrelated pathological or disease process." American Heritage Stedman's Medical Dictionary 174 (1995). From a lay person's perspective, this term means a disease or medical condition that exists simultaneously with a primary disease but stands on its own as a specific disease or medical condition. As the hydrocodone intoxication (the alleged injury) did not directly cause Mr. Sampah's death, Defendant has no obligation to pay death benefits under the terms of the Policy. Further, the record necessarily establishes that the injury was not independent of all other causes, which is an additional reason why Defendant has no duty or obligation to pay death benefits.

Alternatively, the court determines that Defendant has no obligation to pay death benefits because the record establishes that sickle cell anemia and cardiovascular disease were contributing factors to Mr. Sampah's cause of death, and the existence of such diseases excludes coverage under the Policy. Moreover, nothing in the record establishes that Mr. Sampah was using the hydrocodone in accordance with its usage instructions, which is another ground for exclusion of coverage under

the Policy. Accordingly, Mr. Sampah's death falls outside the Policy's coverage, and CUNA did not breach any provision of the Policy by refusing to pay death benefits to Plaintiff.

The court makes two final points. First, the court determines that Plaintiff's counter arguments are unavailing. Plaintiff contends that Mr. Sampah's death was indeed an accident because Dr. Keen classified his death as an "accident," in his amended autopsy report. Plaintiff states that despite having several options to classify the manner of death, Dr. Keen chose "accident," which indicates the "true" manner of death. Dr. Keen's classification of death is quite beside the point as to whether Mr. Sampah's death falls within the terms of the Policy. Dr. Keen's classification is relevant only insofar as it relates to the autopsy report. In this case, the controlling definition of "accident" is found in the Policy. Furthermore, Plaintiff has not presented any evidence that Dr. Keen's definition of "accident" and the Policy definition of "accident" are the same. As such, the court cannot accept Dr. Keen's definition to interpret the Policy, and it would be error to do so when his definition conflicts with that in the Policy.

Second, the court finds Plaintiff's argument that *Hudman* does not control unavailing. The language in *Hudman* is quite similar, if not virtually identical, to the key Policy language in this case. In *Hudman,* the court stated, "[w]e do not hold that every preexisting frailty or enfeeblement of the human body which co-exists with an accidental injury will defeat recovery under such policies as Hudman's. To do so would defeat recovery in most instances because mere senescence makes all flesh heir to infirmity and weakness." *Hudman,* 398 S.W.2d at 114. More importantly, the court in *Hudman* stated, "[a]ll the medical experts agreed that the accidental injury concurred with a preexisting serious disease to cause the death." *Id.* at 115. Likewise, in this case all three experts testified and opined that the preexisting cardiovascular disease and sickle cell anemia along with

hydrocodone intoxication caused Mr. Sampah's death. Accordingly, the court's determination in this case is wholly consistent with the decision in *Hudman.*

### C. Motion for Submission on the Briefs

Defendant moves the court to rule on the written submission of the parties because resolution of the matters in dispute turn on the contract interpretation. As the court has ruled on Defendant's Motion for Final Summary Judgment and disposed of all of Plaintiff's claims, the Motion for Submission on the Briefs is denied as moot.

## IV. Conclusion

For the reasons stated herein, the court determines that no genuine issues of material fact exist as to Plaintiff's claims for breach of contract, violations of the DTPA, and violations of the Texas Insurance Code. Accordingly, the court **grants** Defendant CUNA Mutual Insurance Society's Motion for Summary Judgment. The court **dismisses with prejudice** Plaintiff's claims for breach of contract, violations of the DTPA, and violations of the Texas Insurance Code. The court further **denies as moot** Defendant CUNA Mutual Insurance Society's Motion for Submission on the Briefs. As Plaintiff has settled all of her claims and causes of action against Monumental Life Insurance Company, the court **dismisses with prejudice** those claims and causes of action. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the court will enter a judgment by separate document.

**It is so ordered** this 31st day of May, 2011.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge